**GABRIELLI LEVITT LLP**
Michael J. Gabrielli
michael@gabriellilaw.com
2426 Eastchester Road, Suite 201
Bronx, New York 10469
Telephone: (718) 708-5322
Facsimile: (718) 708-5966

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PRECIOUS WILLIAMS, individually and on behalf of other similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>EPIC BUSINESS SERVICES, INC. d/b/a MAJESTIC PURE COSMECEUTICALS,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Precious Williams, a New York Resident ("Plaintiff"), individually and on behalf of other similarly situated individuals, allege the following Class Action Complaint against Defendant, Epic Business Services, Inc. d/b/a Majestic Pure Cosmeceuticals ("Majestic Pure" or "Defendant"), upon personal knowledge as to herself and her own acts and upon information and belief as to all other matters, based upon, inter alia, the investigation made by her attorneys – as to all other matters, as follows:

## INTRODUCTION

1.      This action seeks to remedy the deceptive and misleading business practices of Majestic Pure with respect to the marketing and sales of Majestic Pure's Lavender Essential Oil, Peppermint Essential Oil, Clove Leaf Essential Oil, Rosemary Essential Oil, Myrrh Essential Oil, Frankincense Essential Oil, Lemon Essential Oil, Thyme Essential Oil, Bergamot Essential Oil, Geranium Essential Oil, Tea Tree Essential Oil, Jasmine Essential Oil, Eucalyptus Essential Oil and Roman Chamomile Essential Oil (hereinafter the "Products") throughout the State of New York and the rest of the country.[1]

---

[1] Discovery may demonstrate that additional Majestic Pure products are within the scope of this Complaint.

2.     Defendant manufactures, sells, and distributes the Products using a marketing and advertising campaign that is centered around false claims appealing to health-conscious consumers that the Products are of natural plant origins and are "100% Pure and Natural."

3.     On its website[2], Majestic Pure has made a number of representations during the relevant statutory time frame regarding the purported purity of its Products, including, but not limited to the following:

Unlock Your Natural Beauty with Majestic Pure.

At Majestic Pure, we believe that natural beauty starts with our relationship to Mother Earth. We believe in the power of plants, and that pure and clean ingredients nourish you from the inside out. Our essential oils, body scrubs, shampoos and skin care are made from *simple and pure botanical ingredients*. We source our ingredients carefully and sustainably from the best sources around the world. *We test every shipment of essential oil we receive to verify its purity and quality*.

Majestic Pure is committed to both quality products and quality of life. We offer outstanding products made from simple and pure botanical ingredients that *improve the wellbeing of those who use them.* Our small family travels the world to find top-quality essential oils. We care for the small grower communities and openly share product information on each and every bottle delivered to you.

All of Majestic Pure's botanical oils are *100% pure, free from any additives or adulterants*. All oils from Majestic Pure Aromatherapy are therapeutic grade, meaning they are produced to the highest quality standards possible. We work very close with our suppliers to provide oils that come from organically grown plants (See, **Exhibit A**, annexed hereto; emphasis added).

4.     However, despite Defendant's claims that the Products are "100% Pure and Natural," Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products contains a spectacular array of artificial and synthetic chemicals.

5.     In particular, testing of Majestic Pure essential oils by independent laboratories shows that, contrary to Majestic Pure's widespread claims that its essential oils are "100% Pure and Natural," Majestic Pure's essential oils, in fact, are adulterated with man-made synthetic compounds and unlisted ingredients that unnaturally sweeten or otherwise alter the aroma and profile of the oils and/or make its oils less expensive to produce. In fact, despite claims of Majestic Pure oils improving the "wellbeing of those who use them," lab analysis has uncovered that, in some instances, Majestic Pure essential oils are contaminated with toxic components such as diethyl phthalate ("DEP"), a possible carcinogen which studies suggest can also cause damage to the nervous system as well as to reproductive organs. *See*, **Exhibit C**, annexed hereto.

---

[2] https://www.majesticpure.com/ (last visited December 21, 2017)

6.      Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Products are "100% Pure and Natural" when purchasing the Products. Plaintiff and Class Members paid a premium for the Products over comparable products that did not purport to be "100% Pure and Natural." Given that Plaintiff and Class Members paid a premium for the Products based on Defendant's misrepresentations that they are "100% Pure and Natural," Plaintiff and Class Members suffered an injury in the amount of the premium paid.

7.      Defendant's conduct violated and continues to violate New York General Business Law §§ 349 and 350, the consumer protection statutes of all 50 states, and the Magnuson-Moss Warranty Act. Defendant breached its express warranties regarding the Products. Accordingly, Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Product during the applicable statute of limitations period (the "Class Period").

## JURISDICTION AND VENUE

8.      This Court has original jurisdiction over the claims asserted herein individually and on behalf of the Class pursuant to 28 U.S.C. §1332, as amended in 2005 by the Class Action Fairness Act Subject matter jurisdiction is proper because: (1) the amount in controversy in this class action exceeds $5,000,000, exclusive of interest and costs; and (2) a substantial number of the members of the proposed class are citizens of a state different from that of Defendant, a corporation with its principal place of business in San Diego, California.

9.      This Court has personal jurisdiction over Defendant because it regularly conducts business in this District and purposefully avails itself of the laws of New York to market, promote, distribute, and sell the Products to consumers in New York and this District.

10.      Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District.

## PARTIES

11.      This is a nationwide consumer class action brought by Plaintiff on behalf of all individuals who purchased the Products for personal use and not for resale.

12.      During the relevant period, Class Members in New York and throughout the United States purchased the Products through numerous brick-and-mortar retail locations and online websites. Plaintiff and

Class Members suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices set forth in this Complaint.

13.     Plaintiff is a resident of Bronx County, New York. She purchased the Defendant's Products for personal use within the State of New York during the three years preceding the filing of this Complaint.

14.     Plaintiff purchased Defendant's Products because she saw the labeling, advertising, and read the packaging, which represented that the products were "100% Pure and Natural." She relied on Defendant's false, misleading, and deceptive representations that the products were "100% Pure and Natural." Had she known the truth—that the representations she relied upon in making her purchases were false, misleading, and deceptive—she would not have purchased the products at a premium price.

15.     Defendant's statements are false and misleading to a reasonable consumer because, as set forth more fully herein, the Products contain synthetic and toxic chemicals and, as such, are not "100% Pure and Natural."

16.     Defendant is a corporation organized and existing under the laws of the State of California with its principal place of business in San Diego, California. Defendant manufactures, markets, advertises and distributes the Products throughout New York and the United States. Defendant created and/or authorized the false, misleading and deceptive advertisements, packaging and labeling for the Products.

## SUBSTANTIVE ALLEGATIONS

17.     Essential oils are aromatic volatile liquids derived from plants. They have many uses, including use in food flavoring, perfume industries, and in aromatherapy.

18.     The particles in essential oils come from distilling or extracting the different parts of plants, including the flowers, leaves, bark, roots, resin and peels.

19.     Essential oil benefits come from their antioxidant, antimicrobial and anti-inflammatory properties. These healing oils are rapidly growing in popularity because they act as natural medicine without any side effects.

20.     Whether inhaled or applied on the skin, essential oils are gaining new attention as an alternative treatment for infections[3], burns[4], stress, and other health problems.

---

[3] https://www.ncbi.nlm.nih.gov/m/pubmed/15555788/;
https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3346404/; https://www.ncbi.nlm.nih.gov/m/pubmed/19473851/

21.     The global market for essential oil sales is estimated to reach \$11.67 billion by 2022.[5]

22.     Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in food, cleaning products, bath and beauty products and everyday household products. Indeed, consumers are willing to pay, and have paid, a premium for products branded "natural" or "pure" over products that contain synthetic ingredients. In 2015, sales of natural products grew 9.5% to \$180 billion.[6] Reasonable consumers, including Plaintiff and Class Members, value natural or pure products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as natural or pure.

23.     Majestic Pure knows this. Majestic Pure also knows that consumers will pay a premium for natural or pure products that do not contain harsh chemicals. To capture this growing market, Majestic Pure labels its Products as "100% Pure and Natural."

24.     Majestic Pure's oils are not "100% Pure and Natural" and are not certified pure or natural by the FDA or any independent third party.

25.     Instead, Majestic Pure's essential oils are a chemical soup, containing a substantial array and significant amount of ingredients that are synthetic.

26.     On information and belief, Lavender, Peppermint, Tea Tree, Frankincense, Jasmine, Eucalyptus, Thyme, Clove Leaf, Rosemary, Myrrh, Lemon, Geranium and Bergamot essential oils are some of Majestic Pure's top selling essential oils.

27.     Independent laboratory testing has concluded that Majestic Pure's Lavender essential oil is adulterated/contaminated with synthetic additives, linalool and linalyl acetate. *See*, **Exhibit B**, attached hereto and incorporated by reference. Synthetic linalyl acetate is widely used to create a lavender aroma at a lower cost than natural essential oil.

---

[4] http://www.stjudesmiracleoil.com/essential-oils-in-studies-for-wounds-bleeding/

[5] http://www.prnewswire.com/news-releases/essential-oil-market-size-to-reach-1167-billion-by-2022-grand-view-research-inc-531216151.html

[6] Natural Products Industry Sales up 9.5% to \$180bn Says NBJ, FOOD NAVIGATOR, http://www.foodnavigatorusa.com/Markets/EXPO-WEST-trendspotting-organics-natural-claims/(page)/6; see also Shoshanna Delventhal, Study Shows Surge in Demand for "Natural" Products, INVESTOPEDIA (February 22, 2017), http://www.investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp (Study by Kline Research indicated that in 2016, the personal care market reached 9% growth in the U.S. and 8% in the U.K. The trend-driven natural and organic personal care industry is on track to be worth \$25.1 million by 2025).

28.     In addition, independent laboratory testing has further concluded that Majestic Pure's Lavender essential oil is adulterated/contaminated with the carrier component, DEP, a toxic phthalate plasticizer. *See*, **Exhibit C**, attached hereto and incorporated by reference.

29.     Independent laboratory testing has concluded that Majestic Pure's Peppermint essential oil is adulterated. *See*, **Exhibit D**, attached hereto and incorporated by reference.

30.     In addition, an FDA-supervised recall in or about April of 2016 revealed that Majestic Pure's Peppermint essential oil was adulterated/contaminated with the carrier component, DEP, a toxic phthalate plasticizer. *See*, **Exhibit C**, attached hereto and incorporated by reference.

31.     Independent laboratory testing has concluded that Majestic Pure's Clove Leaf essential oil is adulterated. *See*, **Exhibit E**, attached hereto and incorporated by reference.

32.     Independent laboratory testing has concluded that Majestic Pure's Rosemary essential oil is adulterated. *See*, **Exhibit F**, attached hereto and incorporated by reference.

33.     Independent laboratory testing has concluded that Majestic Pure's Myrrh essential oil is adulterated. *See*, **Exhibit G**, attached hereto and incorporated by reference.

34.     Independent laboratory testing has concluded that Majestic Pure's Frankincense essential oil is adulterated. *See*, **Exhibit H**, attached hereto and incorporated by reference.

35.     Independent laboratory testing has concluded that Majestic Pure's Lemon essential oil is adulterated. *See*, **Exhibit I**, attached hereto and incorporated by reference.

36.     Independent laboratory testing has concluded that Majestic Pure's Thyme essential oil is adulterated. *See*, **Exhibit J**, attached hereto and incorporated by reference.

37.     Independent laboratory testing has concluded that Majestic Pure's Bergamot essential oil is adulterated. *See*, **Exhibit K**, attached hereto and incorporated by reference.

38.     Independent laboratory testing has concluded that Majestic Pure's Geranium essential oil is adulterated. *See*, **Exhibit L**, attached hereto and incorporated by reference.

39.     Independent laboratory testing has concluded that Majestic Pure's Tea Tree essential oil is adulterated. *See*, **Exhibit M**, attached hereto and incorporated by reference.

40.     Independent laboratory testing has concluded that Majestic Pure's Jasmine essential oil is adulterated. *See*, **Exhibit N**, attached hereto and incorporated by reference.

41.     Independent laboratory testing has concluded that Majestic Pure's Eucalyptus essential oil is adulterated/contaminated with the carrier component, DEP, a toxic phthalate plasticizer. *See*, **Exhibit C**, attached hereto and incorporated by reference.

42.     Independent laboratory testing has concluded that Majestic Pure's Roman Chamomile essential oil is adulterated/contaminated with the carrier component, DEP, a toxic phthalate plasticizer. *See*, **Exhibit C**, attached hereto and incorporated by reference.

43.     Congress has defined "synthetic" to mean a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources.[7]

44.     Despite the Products consisting of a majority of synthetic and toxic chemicals, Defendant markets the Products as being "100% Pure and Natural." In fact, the label of the Products at issue states prominently in lettering the words "100% Pure and Natural" See, **Exhibit O, annexed hereto.**

45.     As such, Defendant's representation that the Products are "100% Pure and Natural" is false, misleading and deceptive.

46.     Representing that a product is "100% Pure and Natural" is a statement of fact.

47.     Consumers reasonably believe that a product labeled as "100% Pure and Natural" does not contain synthetic and/or toxic ingredients.

48.     Majestic Pure knows and intends that when consumers see the product labels promising the Products are "100% Pure and Natural," consumers will understand that to mean that, at the very least, the Products do not contain synthetic and/or toxic ingredients.

49.     Majestic Pure's representation that its Products are "100% Pure and Natural" is false. In fact, the products contain one or more synthetic and/or toxic ingredients as set forth above.

50.     The falsely labeled Products are thus not "100% Pure and Natural" and labeling them as such is misleading and deceptive.

51.     Majestic Pure's conduct deceived and/or was likely to deceive the public. Consumers were deceived into believing that the Products did not contain synthetic or toxic additives, and were "100% Pure and Natural." Instead, the Products' ingredients are synthetic/toxic and are not reasonably expected by consumers

---

[7] 7 U.S.C. § 6502(2.1).

to be added to the Products.

52.    Majestic Pure deceptively and misleadingly conceals other material facts about the falsely labeled Products, including:

a.    the true nature of the falsely labeled Products' ingredients;

b.    that the falsely labeled Products contain artificial substances, toxic substances and synthetic substances, substances that are synthetically manufactured, or are produced or processed using synthetic ingredients or artificial ingredients;

c.    that the falsely labeled Products are not "100% Pure and Natural"; and

d.    that the falsely labeled Products are not what a reasonable consumer would consider to be "100% Pure and Natural."

53.    Plaintiff and the members of the Class are not at fault for failing to discover Majestic Pure's wrongs earlier, and had no actual or presumptive knowledge of facts sufficient to put them on inquiry notice.

54.    The production and/or sourcing process Majestic Pure uses for its ingredients is known only to it. Majestic Pure has not disclosed such information to Plaintiff and the Class members. These facts are not ascertainable and are still not known to Plaintiff, the Class members, and reasonable consumers. Majestic Pure's concealment tolls the applicable statute of limitations.

55.    To this day, Majestic Pure continues to conceal and suppress the true nature, identity, source, and method of production of the ingredients in the falsely labeled Products.

56.    On or about August 28, 2017, Plaintiff's counsel first provided Majestic Pure with all the material allegations included in this Complaint. On or about December 21, 2017, counsel again provided notice to Defendant, this time with a draft version (subject to revision) of this Complaint. Majestic Pure was thus specifically notified that its Products labeled as "100% Pure and Natural" contained synthetic and toxic substances. Majestic Pure thus knew all the facts demonstrating that its falsely labeled Products were falsely advertised. Majestic Pure made the false, deceptive, and misleading representations and omissions, intending for Plaintiff and the Class members to rely upon these representations and omissions in purchasing the falsely labeled Products.

57.    In making the false, misleading, and deceptive representations and omissions at issue, Majestic Pure knew and intended that consumers would purchase its Products when consumers would otherwise purchase competing products.

58.    In making the false, misleading, and deceptive representations and omissions at issue, Majestic Pure also knew and intended that consumers would pay a premium for "100% Pure and Natural"

products and products that are free of synthetic and/or toxic chemicals, furthering Majestic Pure's private interest of increasing sales of its products and decreasing the sales of products that are truthfully marketed by its competitors.

59.     Majestic Pure knows that consumers prefer "100% pure and natural" products and products that do not contain synthetic and/or toxic chemicals. Majestic Pure knows that consumers will pay a premium for these products or would not purchase these products at all unless they were "100% pure and natural" and/or contained no synthetic or toxic chemicals.

60.     Consumers frequently rely on label representations and information in making purchase decisions, especially in purchasing food, personal care or household products.

61.     When Plaintiff and the Class members purchased the falsely labeled Products, Plaintiff and the Class members saw the false, misleading, and deceptive representations detailed above, and did not receive disclosure of the facts concealed, as detailed above.

62.     These misrepresentations were uniform and were communicated to Plaintiff and every other member of the Class at every point of purchase and consumption.

63.     Plaintiff and the Class members were among the intended recipients of Majestic Pure's deceptive representations and omissions.

64.     Plaintiff and the Class members reasonably relied to their detriment on Majestic Pure's misleading representations and omissions.

65.     Majestic Pure's false, misleading, and deceptive misrepresentations and omissions deceived and misled Plaintiff, the Class members, reasonable consumers, and the general public.

66.     Majestic Pure's misleading affirmative statements further obscured what it failed to disclose. Thus, reliance upon Majestic Pure's misleading and deceptive representations and omissions may be presumed.

67.     Majestic Pure made the deceptive representations and omissions with the intent to induce Plaintiff and the Class members to purchase the falsely labeled Products. Plaintiff's and the Class members' reliance upon such representations and omissions may be presumed.

68.     Majestic Pure's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions. Thus, Plaintiff and the Class members' reliance upon such representations and

omissions may be presumed as a matter of law. The materiality of those representations and omissions also establishes causation between Majestic Pure's conduct and the injuries sustained by Plaintiff and the Class members.

69.    As an immediate, direct, and proximate result of Majestic Pure's false, misleading, and deceptive representations and omissions, Majestic Pure injured Plaintiff and the Class members in that they:

       a.    paid a sum of money for products that were not as represented;

       b.    paid a premium price for products that were not as represented;

       c.    were deprived the benefit of the bargain because the falsely labeled Products they purchased were different from what Majestic Pure warranted;

       d.    were deprived the benefit of the bargain because the falsely labeled Products they purchased had less value than what was represented; and

       e.    did not receive products that measured up to their expectations as created by Majestic Pure.

70.    Had Majestic Pure not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class members would not have been injured as listed above. Accordingly, Plaintiff and the Class members have suffered "injury in fact" as a result of Majestic Pure's wrongful conduct.

71.    Plaintiff and the Class members all paid money for the falsely labeled Products, but did not obtain the full value of the advertised products due to Majestic Pure's misrepresentations and omissions. Plaintiff and the Class members purchased, purchased more of, or paid more for, the falsely labeled Products than they would have had they known the truth about the falsely labeled Products. Accordingly, Plaintiff and the Class members have suffered "injury in fact" and lost money or property as a result of Majestic Pure's wrongful conduct.

72.    As the intended, direct, and proximate result of Majestic Pure's false, misleading, and deceptive representations and omissions, Majestic Pure has been unjustly enriched through more sales of the falsely labeled Products and higher profits at the expense of Plaintiff and the Class members. As a direct and proximate result of its deception, Majestic Pure also unfairly obtained other benefits, including the higher value associated with a "100% pure and natural" brand, redirecting sales to it and away from its competitors, and increased sales of its other products.

## CLASS ALLEGATIONS

73.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

74.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all others similarly situated individuals within the United States (the "Class" or the "Nationwide Class"), defined as follows:

> All consumers who purchased the Products that were labeled or otherwise advertised as "100% Pure and Natural" within the United States during the period from four years before the filing of this Complaint until the date of class certification.

75.     Additionally, Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated New York citizens (the "New York Subclass") defined as follows:

> All consumers who purchased the Products that were labeled or otherwise advertised as "100% Pure and Natural" within New York during the period from four years before the filing of this Complaint until the date of class certification.

76.     Upon information and belief, the scope of the Class and Subclass definitions, including temporal scope, may be further refined after discovery of Defendant's and/or third party records.

77.     The Class and the New York Subclass will be referred to collectively throughout the Complaint as the "Class."

78.     Excluded from the Class are (1) Defendant, any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

79.     All members of the Class were and are similarly affected by the deceptive advertising of the Defendant, and the relief sought herein is for the benefit of Plaintiff and members of the Class.

80.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

81.     **Numerosity – Federal Rule of Civil Procedure 23(a)(l).** At this time, Plaintiff does not know the exact number of the Class and Subclass members. Based on the annual sales and popularity of the Products, it is readily apparent that the number of consumers in the Class is so large as to make joinder impracticable, if not impossible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

82.    **Commonality and Predominance –Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

(a)    whether Majestic Pure misrepresented and/or failed to disclose material facts concerning the falsely labeled Products;

(b)    whether Majestic Pure's conduct was unfair, misleading and/or deceptive; and

(c)    whether Majestic Pure breached an express warranty created through the labeling and marketing of its falsely labeled Products;

(d)    whether, as a result of Defendant's misconduct as alleged herein, Plaintiff and the Class suffered an ascertainable loss; and

(e)    Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class Members.

83.    With respect to the New York Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include:

(a)    whether, in violation of § 349 of the New York General Business Law ("GBL"), Defendant engaged in deceptive acts or practices; and

(b)    whether, in violation of GBL § 350, Defendant engaged in false advertising.

84.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself, and the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

85.    Plaintiff's claims are typical of the claims of the Nationwide Class. Plaintiff is a member of a well-defined class of similarly situated persons and the members of the Nationwide Class were similarly affected by Defendant's conduct and are owed the same relief, as alleged in this Complaint. Members of the Nationwide Class are ascertainable from Plaintiff's description of the class, Defendant's records, and records of third parties accessible through discovery.

86.    Plaintiff's claims are typical of the claims of the New York Subclass. Plaintiff is a member of a well-defined class of similarly situated persons and the members of the New York Subclass were similarly affected by Defendant's conduct and are owed the same relief, as alleged in this Complaint. Members of the New York Subclass are ascertainable from Plaintiff's description of the class, Defendant's records, and records of third parties accessible through discovery.

87. **Adequacy of Representation - Federal Rule of Civil Procedure 23(a)(4).** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, and she has retained counsel competent and experienced in both consumer protection and class action litigation. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the Class. Undersigned counsel has represented consumers in a variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

88. **Insufficiency of Separate Actions - Federal Rule of Civil Procedure 23(b)(l).** Absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Class thus satisfies the requirements of Fed. R. Civ. P. 23(b)(l).

89. **Predominance and Superiority of Class Action.** The prerequisites to maintaining a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) are met because questions of law and fact common to each Class member predominates over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

90. Individual joinder of the Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual Class members. Each Class member has been damaged and is entitled to recovery as a result of the violations alleged herein.

91. Moreover, because the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual Class members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

92. Defendant's conduct is generally applicable to the Class and the New York Subclass as a whole and Plaintiff seeks, inter alia, equitable remedies with respect to the Class and the New York Subclass as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class and the New York Subclass as a whole appropriate.

93. Plaintiff is unaware of any difficulties in managing this case that should preclude class action.

## CAUSES OF ACTION
### COUNT I

### Violation of New York General Business Law § 349: Mislabeling (On Behalf of the New York Subclass)

94.     Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

95.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

96.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages, compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

97.     There is no adequate remedy at law.

98.     Defendant misleadingly, inaccurately, and deceptively presented their Products to consumers.

99.     Defendant's improper consumer-oriented conduct—including labeling and advertising the Products as being "100% Pure and Natural"—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have. Defendant made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

100.    Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for Products that were—contrary to Defendant's representations— not "100% Pure and Natural." Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

101.    Defendant's advertising, including online advertising, and the Products' packaging and labeling induced the Plaintiff and the New York Subclass Members to buy Defendant's Products and to pay a premium price for them.

102.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Sub-Class Members have been damaged thereby.

103.    As a result of Defendant's recurring, unlawful deceptive acts and practices, Plaintiff and the New York Sub-Class Members are entitled to monetary, compensatory, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

THEREFORE, Plaintiff prays for relief as set forth below.

## COUNT II

### Violation of the New York General Business Law § 350
### (On Behalf of the New York Subclass)

104.    Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

105.    The acts of Defendant, as described above, and each of them, constitute unlawful, deceptive and fraudulent business acts and practices.

106.    New York General Business Law § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

107.    GBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

108.    Plaintiff and the members of the New York Subclass are consumers who purchased the Products in New York.

109.    As sellers of goods to the consuming public, Defendant is engaged in the conduct of business, trade, or commerce within the intended ambit of GBL § 350.

110.    Defendant's representations made by statement, word, design, device, sound, or any combination thereof, and also the extent to which Defendant's advertising fails to reveal material facts with respect to the Products, as described above, constitute false advertising in violation of the New York General Business Law.

111.    Defendant's false advertising was knowing and intentional.

112.    Defendant's actions led to direct, foreseeable and proximate injury to Plaintiff and the New York Subclass.

113.    As a consequence of Defendant's deceptive marketing scheme, Plaintiff and the other members of the New York Subclass suffered an ascertainable loss, insofar as they would not have purchased the Products had the truth been known, or would have purchased the Products on different terms, or would otherwise purchase a competing product, and as a result of Defendant's conduct, they received products of less value than what they paid for.

114.    By reason of the foregoing, Defendant is liable to Plaintiff and the other members of the New York Subclass for actual damages, injunctive relief, attorneys' fees, and the costs of this suit.

THEREFORE, Plaintiff prays for relief as set forth below.

<u>COUNT III</u>

**Breach of Express Warranty**

115.    Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

116.    Majestic Pure provided Plaintiff and other members of the Class with written express warranties including, but not limited to, warranties that its falsely labeled Products were "100% Pure and Natural."

117.    These affirmations of fact or promises by Majestic Pure relate to the goods and became part of the basis of the bargain.

118.    Plaintiff and members of the Class purchased the falsely labeled Products believing them to conform to the express warranties.

119.    Majestic Pure breached these warranties. This breach resulted in damages to Plaintiff and other members of the Class, who bought the falsely labeled Products but did not receive the goods as warranted.

120.    Plaintiff and the members of the Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

121.    Plaintiff, on behalf of herself and the Class, provided Defendant with pre-suit notice of their breach of the express warranties provided on the label of the Products.

122.    By providing pre-suit notice, Plaintiff has effectively notified the Defendant of the troublesome nature of their transactions within a reasonable time of discovering the breach.

123.    Despite providing the above notice to the Defendant that the Products do not meet Defendant's warranties and in fact fail in many respects to perform consistent with the Products' representations, Defendant continues to hide the facts from consumers and fails to correct the material misrepresentations regarding defects of the Products.

124.    Actual and/or constructive notice was duly given to Defendant of the breaches of these warranties, and Defendant has yet failed to cure.

125.    As a proximate result of the breach of warranties by Majestic Pure, Plaintiff and the other members of the Class did not receive goods as warranted. Plaintiff and the members of the Class therefore have been injured and have suffered damages in an amount to be proven at trial. Among other things, Plaintiff and members of the Class did not receive the benefit of the bargain and have suffered other injuries as detailed above. Moreover, had Plaintiff and the Class members known the true facts, they would not have purchased the products, would have purchased fewer products, or would not have been willing to pay the premium price Majestic Pure charged for the products.

THEREFORE, Plaintiff prays for relief as set forth below.

**COUNT IV**

**Violation of State Consumer Protection Statutes**

126.    Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

127.    Plaintiff and Class Members have been injured as a result of Defendant's violations of the following state consumer protection statutes, which also provide a basis for redress to Plaintiff and Class Members based on Defendant's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

128.    Defendant's conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the following jurisdictions:

a.    **Alaska:** Defendant's practices were and are in violation of Alaska's Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*

b.    **Arizona:** Defendant's practices were and are in violation of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq.*

c.    **Arkansas:** Defendant's practices were and are in violation of Arkansas Code Ann. § 4-88-101, *et seq.*

d.    **California:** Defendant's practices were and are in violation of California Consumer Legal Remedies Act, Civil Code § 1750, *et seq.,* and California's Unfair Competition Law, California Business and Professions Code § 17200, *et seq.*

e.    **Colorado:** Defendant's practices were and are in violation of Colorado's Consumer Protection Act, Colo. Rev. Stat. §§ 61-1-101, *et seq.*

f.    **Connecticut:** Defendant's practices were and are in violation of Connecticut's Gen. Stat. § 42-11Oa, *et seq.*

g.    **Delaware:** Defendant's practices were and are in violation of Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.* and the Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*

h.    **District of Columbia:** Defendant's practices were and are in violation of the District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

i.    **Florida:** Defendant's practices were and are in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*

j.    **Hawaii:** Defendant's practices were and are in violation of the Hawaii's Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. § 48 lA-1, *et seq.* and Haw. Rev. Stat. § 480-2.

k.    **Idaho:** Defendant's practices were and are in violation of Idaho's Consumer Protection Act, Idaho Code Ann. § 48-601, *et seq.*

l.    **Illinois:** Defendant's acts and practices were and are in violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2; and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2.

m.    **Indiana:** Defendant's practices were and are in violation of Indiana's Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1, *et seq.*

n.    **Kansas:** Defendant's practices were and are in violation of Kansas's Consumer Protection Act, Kat. Stat. Ann. § 50-623, *et seq.*

o.    **Kentucky:** Defendant's practices were and are in violation of Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*

p.    **Maine:** Defendant's practices were and are in violation of the Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. Ann. Tit. 5, § 205-A, *et seq.* and 10 Me. Rev. Stat. Ann. § 1101, *et seq.*

q.    **Maryland:** Defendant's practices were and are in violation of Maryland's Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq.*

r.    **Massachusetts:** Defendant's practices were unfair and deceptive acts and practices in violation of Massachusetts' Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2.

s.    **Michigan:** Defendant's practices were and are in violation of Michigan's Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.*

t.    **Minnesota:** Defendant's practices were and are in violation of Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* and the Unlawful Trade Practices law, Minn. Stat. § 325D.09, *et seq.*

u.    **Missouri:** Defendant's practices were and are in violation of Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

v.    **Nebraska:** Defendant's practices were and are in violation of Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.* and the Uniform Deceptive Trade Practices Act, § 87-302, *et seq.*

w.    **Nevada:** Defendant's practices were and are in violation of Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0903 and 41.600.

x.    **New Hampshire:** Defendant's practices were and are in violation of New Hampshire's Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*

y.    **New Jersey:** Defendant's practices were and are in violation of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*

z.    **New Mexico:** Defendant's practices were and are in violation of New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*

aa.    **North Carolina:** Defendant's practices were and are in violation of North Carolina's Unfair Deceptive Trade Practices Act, N.C.Gen. Stat. Ann. § 75-1, *et seq.*

bb.    **North Dakota:** Defendant's practices were and are in violation of North Dakota's Unlawful Sales or Advertising Practices law, N.D. Cent. Code § 51-15- 01, *et seq.*

cc.    **Ohio:** Defendant's practices were and are in violation of Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq.* and Ohio's Deceptive Trade Practices Act. Ohio Rev. Code Ann. § 4165.01, *et seq.*

dd.    **Oklahoma:** Defendant's practices were and are in violation of Oklahoma's Consumer Protection Act, Okla. Stat. Ann. tit. 15 § 751, *et seq.,* and Oklahoma's Deceptive Trade Practices Act, Okla. Stat. Ann. tit. 78 § 51, *et seq.*

ee.    **Oregon:** Defendant's practices were and are in violation of Oregon's Unlawful Trade Practices law, Or. Rev. Stat. § 646.605, *et seq.*

ff.    **Pennsylvania:** Defendant's practices were and are in violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq.*

gg.    **Rhode Island:** Defendant's practices were and are in violation of Rhode Island's Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*

hh.    **South Dakota:** Defendant's practices were and are in violation of South Dakota's Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws § 37-24-1, *et seq.*

ii.    **Texas:** Defendant's practices were and are in violation of Texas' Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. CodeAnn. § 17.41, *et seq.*

jj.    **Utah:** Defendant's practices were and are in violation of Utah's Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.,* and Utah's Truth in Advertising Law, Utah Code Ann. § 13-lla-1, *et seq.*

kk.    **Vermont:** Defendant's practices were and are in violation of Vermont's Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq.*

ll.    **Washington:** Defendant's practices were and are in violation of Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86, *et seq.*

mm.    **West Virginia:**  Defendant's practices were and are in violation of West Virginia's Consumer Credit and Protection Act, W. Va. Code §4≥6A-6-101, *et seq.*

nn.    **Wisconsin:** Defendant's practices were and are in violation of Wisconsin's Consumer Act, Wis. Stat. §421.101, *et seq.*

oo.    **Wyoming:**  Defendant's practices were and are in violation of Wyoming's Consumer Protection Act, Wyo. Stat. Ann. §40-12-101, *et seq.*

129.    Defendant's misrepresentations were material to Plaintiff's and Class Members' decision to pay a significant premium for the Products.

130.    Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

131.    As a result of Defendant's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members paid a significant premium for the Products as compared to products serving the same purpose.

132.    As a result of Defendant's violations, Defendant has been unjustly enriched.

133.    Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

## COUNT V

### Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

134.    Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

135.    Plaintiff brings this claim individually and on behalf of all members of the Class.

136.     Upon certification, the Class will consist of more than 100 named Plaintiffs.

137.     The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.

138.     The Products are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

139.     Plaintiff and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

140.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson- Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

141.     Defendant represented in writing that the Products are "100% Pure and Natural."

142.     These statements were made in connection with the sale of the Products and relate to the nature of the Products and affirms and promises that the Products are as represented and defect free and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

143.     As alleged herein, Defendant breached the written warranty by selling consumers Products that are not "100% Pure and Natural."

144.     The Products do not conform to the Defendant's written warranty and therefore violate the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. Consequently, Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

### COUNT VI

#### Breach of Implied Warranty of Fitness for a Particular
#### Purpose

145.     Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

146.     Defendant knew or had reason to know that the Plaintiff and other Class Members were buying its Products with the specific purpose of buying products that contained exclusively "100% Pure and Natural" ingredients.

147.    Plaintiff and the other Class Members, intending to use wholly pure and natural products, relied on the Defendant in selecting its Products to fit their specific intended use.

148.    Defendant held itself out as having particular knowledge of the Defendant's Products' ingredients.

149.    Plaintiff and Class Members' reliance on Defendant in selecting Defendant's Products to fit their particular purpose was reasonable given Defendant's claims and representations in its advertising, packaging and labeling concerning the Products' ingredients and efficacy.

150.    Plaintiff and the other Class Members' reliance on Defendant in selecting Defendant's Products to fit their particular use was reasonable given Defendant's particular knowledge of the Products it manufactures and distributes.

151.    As a result of the foregoing, Plaintiff and Class Members have been damaged in the amount paid for the Defendant's Products, together with interest thereon from the date of purchase.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment on behalf of herself, the Nationwide Class and the New York Subclass, providing such relief as follows:

A.      An order certifying the proposed Nationwide Class and the New York Subclass; appointing Plaintiff as representative of the Nationwide Class; appointing Plaintiff as representative of the and the New York Subclass; and appointing Plaintiff's undersigned counsel as Class counsel for the Class and Subclass;

B.      A declaration that Defendant is financially responsible for notifying Class and Subclass members of the pendency of this suit;

C.      An order requiring proper, complete, and accurate labeling of the Products;

D.      Actual damages pursuant to New York General Business Law §§ 349 and 350;

E.      Monetary damages, injunctive relief, and actual damages in the maximum amount provided by law;

F.      Punitive damages in accordance with proof and in an amount consistent with applicable precedent;

G.      An order awarding Plaintiff and the other Class members the reasonable costs and expenses

of suit, including their attorneys' fees; and

      H.     Any further relief that the Court may deem appropriate.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury. Plaintiff also respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

DATED: May 14, 2018

                  **GABRIELLI LEVITT LLP**

                  Michael J. Gabrielli (MG-2421)
                  michael@gabriellilaw.com
                  2426 Eastchester Rd., Ste. 103
                  Bronx, New York 10469
                  Telephone: (718) 708-5322
                  Facsimile: (718) 708-5966

                  *Counsel for Plaintiff and the Proposed Class*